# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| TIMOTHY KILROY, | ) |
|           Plaintiff, | ) ) ) |
| v. | ) Docket no. 1:11-cv-343 |
| MARY MAYHEW, COMISSIONER, MAINE DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) ) ) |
|           Defendant. | |

## ORDER ON MOTION TO DISMISS

Before the Court is Defendant's Motion to Dismiss (Docket # 7) Plaintiff's Complaint. As explained herein, the line of cases starting with Burford v. Sun Oil Co., 319 U.S. 315 (1943), requires that the Court ABSTAIN. Defendant's Motion to Dismiss is therefore GRANTED.

## I.    LEGAL STANDARD

Defendant moves to dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Generally, under Rule 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction. See, e.g., Am. Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138 (1st Cir. 2004) ("Federal courts are courts of limited jurisdiction. In the absence of jurisdiction, a court is powerless to act."). After determining that it in fact has jurisdiction, under Rule 12(b)(6), the Court then considers the "legal sufficiency" of a complaint. Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004).

Courts in this circuit have disagreed as to how the general rubric applies in the context of abstention doctrines. See Mass. Delivery Ass'n v. Coakley, 797 F. Supp. 2d 164, 168 n.2 (D. Mass. 2011) (collecting cases involving Younger abstention); see also Burckhart Search Group,

Inc. v. Doral Fin. Corp., Civil No. 11-1565 (JAF), 2011 WL 6029817, at *3 n.5 (D.P.R. Nov. 30, 2011). This Court has previously noted that "abstention is a prudential rather than a jurisdictional ground for dismissal," and, therefore, when considering abstention it does "not rely upon the pleading or burden requirements of either Rule 12(b)(1) or Rule 12(b)(6)." See Christian Action Network v. Maine, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010). In the context of this Motion, the relevant facts in this case are not in dispute nor do the parties dispute the Court's ability to consider the Amended Administrative Hearing Decision attached to Defendant's Motion. See id.; Biddeford Internet Corp. v. Verizon New Eng. Inc., 456 F. Supp. 2d 165, 169 (D. Me. 2006) (allowing for the consideration of a document attached to a motion to dismiss if the document is: one whose authenticity is not in dispute; an official public record; central to the plaintiff's claims; or sufficiently referred to in the complaint) (internal citations omitted). Therefore, the Court proceeds to lay out the factual background.

## II.  FACTUAL BACKGROUND

Plaintiff Timothy Kilroy ("Kilroy") is a divorced parent of the minor child, C.K.[1] (See Complaint (Docket # 1) ¶ 1.)  Kilroy is also disabled.  Plaintiff and his ex-wife, C.K.'s mother ("Ms. Kilroy), reside separate and apart from each other.  (See id. ¶ 8.)  C.K. resides in Plaintiff's house half of the time and in his mother's house half of the time.  (See id. ¶ 9.)  Pursuant to a Child Support Order dated December 1, 2001, Plaintiff is required to pay Ms. Kilroy $61.00 per week in child support for C.K.  (See id. ¶ 11.)

Due to his disability, Plaintiff receives disability benefits from the Social Security Administration ("SSA").  (See id. ¶ 5.)  Plaintiff's son, C.K., is entitled to SSA dependent benefits in the amount of $844.00 per month.  Those benefits are paid directly to Ms. Kilroy

---

[1] Pursuant to Fed. R. Civ. P. 5.2(a), the Court refers to Plaintiff's minor child by his initials, C.K.  Rule 5.2(a) states that unless the Court orders otherwise, a filing with the Court that contains the name of an individual known to be a minor may only include the minor's initials.

from the SSA. (See id. ¶ 10, 13.) Pursuant to the December 1, 2001 Child Support Order, in any month where the SSA dependent benefits received by Ms. Kilroy for C.K. exceed Plaintiff's total monthly child support obligation, Plaintiff receives a credit for his monthly child support obligation. (See id. ¶ 12.) However, Plaintiff is not given credit toward past or future child support obligations where the SSA dependent benefits received by Ms. Kilroy in any given month exceed Plaintiff's monthly child support obligation. (See id.)

Kilroy also receives food assistance benefits under the federal Supplemental Nutrition Assistance Program ("SNAP") for himself and C.K. (See id. ¶ 7.) The United States Department of Agriculture has promulgated various regulations with respect to the SNAP program, but responsibility for administering the program in Maine has been delegated to the Maine Department of Health and Human Services (the "Department") and thus the Department makes individual eligibility determinations and distributes the food assistance benefits to eligible households. (See id. ¶ 6, 15; 7 U.S.C. § 2020(a), (e); 7 C.F.R. §§ 271.4(a), 272.3.) Defendant is the Commissioner of the Department. (See id. ¶ 6.)

Although the SSA dependent benefits are paid directly to Ms. Kilroy, the Department made a determination that it would include those SSA payments (approximately $844.00 per month) as income in Plaintiff's household for the purpose of calculating food assistance benefits for Plaintiff's household. (See id. ¶ 15.) As a result of this determination, the food assistance benefits for Plaintiff's household are lower than they would be if the SSA payments to Ms. Kilroy were not counted as household income. The SSA dependent benefits received by Ms. Kilroy on behalf of C.K. are not used to purchase food for Plaintiff's household, nor are they used to pay any of Plaintiff's other household expenses. (See id. ¶ 16.)

Plaintiff disagreed with the Department's determination and requested a hearing to appeal the decision. (See Amended Administrative Hearing Decision (Docket # 7-1) at 1.) On June 22, 2011, a hearing was held to determine whether the Department was correct when it counted C.K.'s SSA benefit as Plaintiff's household income. (See id.) Following the hearing, on June 29, 2011, the Department issued a Decision affirming the Department's calculation of food assistance benefits for Plaintiff's household. (See id.) On July 22, 2011, Plaintiff requested that the Hearing Officer amend his Decision on the grounds that (1) the Department had failed to meet its burden in showing that C.K.'s SSA benefit received by Ms. Kilroy is used for C.K.'s benefit, (2) C.K.'s SSA benefit should be treated as excluded income in computing Plaintiff's food assistance benefit amount because a court ordered that C.K.'s SSA benefit be paid to Ms. Kilroy in order to satisfy Plaintiff's child support obligations, and (3) C.K.'s SSA benefit should be considered excluded income as a legally obligated child support payment that is paid to Ms. Kilroy. (See id. at 2, 4.)

The Hearing Officer re-opened the hearing record and received briefing from Plaintiff and the Department. After reviewing the parties' briefings, the Hearing Officer issued an Amended Decision, which concluded that the Department was correct when it counted C.K.'s SSA benefit as income in computing Plaintiff's food assistance benefits, even though that income is not paid to Plaintiff. The Amended Decision further noted that Maine's food stamp rules – specifically, 10-144-301 Me. Code R. § 555-3(2) – includes Social Security benefits as countable unearned income and that § 555-3(9) states that money legally due a household member but received and used for that household member by a non-household member must be included as countable unearned income. (See id. at 4.) Meanwhile, under § 555-4(21), legally obligated child support payments made by a household member to or for an individual who is not

4

a household member is excluded from income for the purpose of calculating food assistance benefits. The Hearing Officer ruled that § 555-4(21) did not apply to Plaintiff's case, however, because C.K.'s SSA benefit is his benefit and not his father's benefit. To be excluded as income, the payment must be a payment made by Plaintiff. Plaintiff, however, does not make the SSA benefit payment – the SSA makes the payment. The Hearing Officer agreed with the Department's argument that "[c]rediting the child's entitlement toward Mr. Kilroy's child support does not amount to a child support payment made by Mr. Kilroy, as Mr. Kilroy did not expend his own resources to make that payment." (See id. at 5 (internal emphasis omitted).) The Hearing Officer further observed that Mr. Kilroy's "income is not used to pay his child support obligation and [C.K.] is not the Food Stamp household member legally obligated to pay child support even though a portion of his income is used as a credit against the support obligation owed by his father." (Id.) The Hearing Officer concluded that C.K.'s "Social Security benefit is used for his care and support and because of that the Food Stamp rules clearly require his Social Security benefit to be used as countable unearned income in computing Mr. Kilroy's Food Stamp benefit." (Id.)

Within thirty days of the Hearing Officer's Amended Decision, Plaintiff filed the instant action seeking an injunction stating that inclusion of C.K.'s SSA benefit paid to his mother's household is not income for the purpose of calculating Plaintiff's food assistance benefit. In addition, Plaintiff seeks preliminary and permanent injunctive relief enjoining Defendant from reducing Plaintiff's food assistance allotment because of the SSA dependent benefit. Plaintiff also asks that Defendant issue the food assistance benefits Plaintiff would have received but for its allegedly improper benefit calculation methodology. Finally, Plaintiff seeks an award for the cost of this litigation as well as reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

## III. DISCUSSION

As the First Circuit has repeatedly emphasized, "federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." See Chico Serv. Station, Inc. v. Sol P.R. Ltd., 633 F.3d 20, 29 (1st Cir. 2011) (citing Ankenbrandt v. Richards, 504 U.S. 689, 705 (1992); United States v. Fairway Capital Corp., 483 F.3d 34, 44 (1st Cir. 2007)). In a discrete set of "exceptional circumstances," however, federal district courts may decline to exercise jurisdiction "where denying a federal forum would clearly serve an important countervailing interest, such as regard for federal-state relations or wise judicial administration." See id. (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)); see also Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 517 (1st Cir. 2009) (citing Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 292 (2005)). "[B]ecause abstention runs so firmly against the jurisprudential grain," the First Circuit instructs that "abstention should be the exception, not the rule." Chico, 633 F.3d at 29 (stating further that abstention is proper only in "narrowly circumscribed situations where deference to a state's administrative processes for the determination of complex, policy-laden, state law issues would serve a significant local interest and would render federal-court review inappropriate"). Similarly, the Supreme Court has held that "the balance of state and federal interests only rarely favors abstention." See Guillemard-Ginorio, 585 F.3d at 517 (citing Quackenbush, 517 U.S. at 728; Deakins v. Monaghan, 484 U.S. 193, 202 (1988)).

At issue in this case is whether the Court should abstain from hearing Plaintiff's case pursuant to the abstention doctrines set forth in Burford v. Sun Oil Co., 319 U.S. 315 (1943), and Younger v. Harris, 401 U.S. 37 (1971). Plaintiff argues that the circumstances of this case, in which the state agency responsible for calculating food assistance benefits allegedly misapplied

6

federal statutory and regulatory law in determining Plaintiff's benefits, cannot support the Court's deference to state administrative processes. Defendant counters that abstention is proper because Plaintiff's action encroaches on Maine state law and administrative processes for the determination and review of food assistance benefits calculations (Burford abstention) and because the exercise of jurisdiction would needlessly inject the Court in an ongoing state proceeding (Younger abstention).

**A. Burford Abstention**

Defendant contends that the Court should abstain from hearing this case under the doctrine set forth in Burford. Plaintiff disagrees, and argues that the Court must decline abstention because (1) Burford abstention requires the presence of a local law or policy, which does not exist in this case, and (2) the instant case poses a question of federal law regarding the state administration of a federal program and is not simply an issue of local law and policy.

As the First Circuit has repeatedly stated, the fundamental concern of the Burford doctrine is "to prevent federal courts from bypassing a state administrative scheme and resolving issues of state law and policy that are committed in the first instance to expert administrative resolution." Chico, 633 F.3d at 29; Vaqueria Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 474 (1st Cir. 2009) (citing Pub. Serv. Co. of New Hampshire v. Patch, 167 F.3d 15, 27 (1st Cir. 1998)). The Supreme Court has set forth the Burford abstention doctrine as follows:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

Chico, 633 F.3d at 29 (quoting New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989)).

While the Burford abstention doctrine could be interpreted broadly, the First Circuit rule is narrow: "Burford abstention must only apply in 'unusual circumstances,' when federal review risks having the district court become the 'regulatory decision-making center.'" Id. at 30 (quoting Vaqueria Tres Monjitas, 587 F.3d at 747); see also Bath Mem'l Hosp. v. Maine Health Care Fin. Comm'n, 853 F.2d 1007, 1012-13 (1st Cir. 1988). "Thus, when a federal court's interference would effectively create a dual review structure for adjudicating a state's specific regulatory actions, abstention under Burford may be appropriate." Vaqueria Tres Monjitas, 587 F.3d at 747 (citing Bath Mem'l Hosp., 853 F.2d at 1012-13); see also Chico, 633 F.3d at 34.

Here, Defendant argues that Burford abstention is appropriate because federal review of Plaintiff's action risks having the Court become the regulatory decision-making center for food assistance benefits determinations. Defendant also cautions that the Court's review of Plaintiff's case would effectively create a dual review structure whereby a Maine recipient of federal food assistance benefits could challenge a benefits determination in either state or federal court, which would jeopardize Maine's ability to coherently administer its system of providing food assistance benefits. See Bath Mem'l Hosp. v. Me. Health Care Fin. Comm'n, 853 F.2d 1007, 1012 (1st Cir. 1988).

In arguing that abstention is inappropriate in this case, Plaintiff relies heavily on the First Circuit's recent decision, Chico Serv. Station, Inc. v. Sol P.R. Ltd., 633 F.3d 20 (1st Cir. 2011). In Chico, the First Circuit overturned the district court's decision to abstain from a citizen suit brought pursuant to the federal Resource Conservation and Recovery Act ("RCRA") in an effort to force the cleanup of contamination caused by leaking underground storage tanks at a former

8

gasoline station. Id. at 22. While Chico provides the framework for considering Burford abstention in this case, the Court initially notes that RCRA and the SNAP statute are fundamentally distinguishable with respect to the delineation of federal and state court review of state agency actions. Whereas RCRA delineates specific situations in which a state or federal agency action forecloses federal court review of a citizen suit, see Chico, 633 F.3d at 31, the SNAP statute requires that participating states provide a hearing process for households aggrieved by a state agency decision. See 7 U.S.C. § 2020(e)(10) (providing that a participating state must provide "for the granting of a fair hearing and a prompt determination thereafter to any household aggrieved by the action of the State agency … as it affects the participation of such household in the supplemental nutrition assistance program").

With this statutory difference in mind, the Court nonetheless considers the three factors enumerated in Chico:

> (1) the availability of timely and adequate state-court review, (2) the potential that federal court jurisdiction over the suit will interfere with state administrative policymaking, and (3) whether conflict with state proceedings can be avoided by careful management of the federal case.

633 F.3d at 32.

**1. Availability of State-Court Review**

In weighing abstention under the Burford doctrine, the Court "must first determine whether timely and adequate state-court review is available." Id. at 32 (quoting NOPSI, 491 U.S. at 361). Under Maine law, a party to an administrative proceeding may appeal any final agency action to a state Superior Court, which will review the decision for abuse of discretion, errors of law, or findings not supported by the evidence. See 5 M.R.S.A. § 11002; Me. R. Civ. P. 80C; Centamore v. Dep't of Human Servs., 664 A.2d 369, 370 (Me. 1995). To commence the appeal process, an individual must file a petition with the Superior Court within thirty days after

receiving notice of the adverse agency decision.[2] See 5 M.R.S.A. § 11002; Me. R. Civ. P. 80C. Once the petition is filed, the agency must file the administrative record within 30 days. See 5 M.R.S.A. § 11005. The briefing schedule for the parties then proceeds: after the agency files the administrative record the petitioner must file his or her brief within forty days, the agency then must respond within thirty days, the petitioner may file a reply brief within fourteen days, and the case must be in order for oral argument twenty days later. See Me. R. Civ. P. 80C(g), (l). During the appeal process, a party may challenge the administrative record, conduct discovery, and request the taking of additional evidence. See 5 M.R.S.A. § 11006; Me. R. Civ. P. 80C(e), (f), (j). Finally, if unsuccessful, the petitioner may appeal the agency's decision to the State Supreme Court sitting as the Law Court. See 5 M.R.S.A. § 11008.

After evaluating the procedure for state court review of state agency decisions under Maine law, this Court finds that state court review is sufficiently timely and adequate to support Burford abstention. Compare Chico, 633 F.3d at 33 (ruling that state court review was not timely because site cleanup had been under consideration by Puerto Rico's Environmental Quality Board for seventeen years but the Board had issued no final order appealable to the commonwealth courts during that time). Instead of filing this action, Plaintiff could have appealed his food assistance benefits determination to the state Superior Court, and, if unsuccessful there, to the Law Court. The Court concludes that Plaintiff's effort to circumvent this timely and adequate state court procedure triggers a fundamental concern of Burford abstention – specifically, having the district court become the "regulatory decision-making center" and creating a dual review structure for adjudicating Maine regulatory actions. See Chico, 633 F.3d at 30; Vaqueria, 587 F.3d at 747.

---

[2] Any aggrieved person other than an aggrieved party to the administrative proceeding shall have 40 days from the date the decision was rendered to petition for review. See 5 M.R.S.A. § 11002.

## 2. Interference with State Policymaking

As noted by the First Circuit, "the animating concern under Burford is the threat that federal courts will usurp the role of state administrative agencies in deciding issues of state law and policy that are committed in the first instance to expert administrative resolution." Chico, 633 F.3d at 32 (citing Patch, 167 F.3d at 24). That concern is triggered here, because Plaintiff's suit directly challenges Maine regulations – specifically, 10-144-301 Me. Code R. §§ FS 555-3(2) & 3(9) – and policy governing food assistance benefits determinations and seeks to circumvent the state's process for challenging benefits determinations.

SNAP and its implementing regulations delegate authority to participating states to promulgate regulations governing benefits determinations and a process for challenging those benefits determinations. See 7 U.S.C. § 2020(a), (e); 7 C.F.R. §§ 271.4(a), 272.3; 7 C.F.R. § 273.15. To be eligible for SNAP, a state must develop and submit a plan of operation for approval by the United States Secretary of Agriculture. See 7 U.S.C. § 2020(d); 7 C.F.R. § 272.2. Once approved, participating states assume many of the core administrative responsibilities for the food assistance program. See 7 U.S.C. § 2020(a), (e); 7 C.F.R. §§ 271.4(a), 272.3. As a participating state, Maine performs these administrative functions, including, developing regulations to govern eligibility determinations, conducting eligibility determinations for applicant households, issuing electronic benefit transfer cards, and developing procedures for appealing eligibility determinations. See 10-144-301 Me. Code R. § FS-1 et seq.; see also 7 U.S.C. § 2020(a), (e); 7 C.F.R. §§ 271.4(a), 272.3; 7 C.F.R. § 273.15.

Furthermore, pursuant to its authority under SNAP, Maine has developed comprehensive procedures for appealing the Department's benefits determinations. Pursuant to these procedures, when the Department takes any action that affects a household's eligibility or level

11

of benefits, it must provide written notice of the basis for its action, the right to a fair hearing, and the availability of free legal counsel. §§ FS-777-5, 999-1. An individual has ninety days to request a hearing, and has numerous procedural rights during the course of the appeals process, including access to a translator, the right to subpoena and call witnesses, and to submit evidence at the hearing. § FS-777-5. The Department officer conducting the hearing must render a decision within sixty days of the hearing request that specifies the factual and legal basis for the decision. § FS-777-5. Moreover, as stated supra, an aggrieved individual may appeal a written agency decision to the Superior Court. See Me. R. Civ. P. 80C.

Because Maine has developed comprehensive rules and regulations governing the administration of SNAP benefits, pursuant to its authority under SNAP, the Court finds that the administration of the SNAP program in Maine is a matter of substantial public concern and that the State has a substantial interest in establishing a coherent policy with respect to the administration of SNAP in Maine. See Huffmire v. Town of Boothbay, 35 F. Supp. 2d 122, 133 (D. Me. 1999). Plaintiff's action challenges the Department's application of Me. Code R. §§ FS-555-3(2) and 3(9) to the determination of his household food assistance benefit allotment. Accordingly, Plaintiff's case presents questions of Maine law and policy, although they are framed by the federal SNAP statute. The Court is concerned that federal review of Maine's food assistance benefits regulations "would be disruptive of state efforts to establish a coherent policy" with respect to Maine's food assistance benefits program, undoubtedly "a matter of substantial public concern." See Chico, 633 F.3d at 33 (citing NOPSI, 491 U.S. at 361). Federal court review in this case would interfere with the coherency of Maine's administrative regulations and processes for eligibility determinations and appeals – authority specifically delegated to states such as Maine by Congress through passage of SNAP. Thus, because federal

court review of this case will interfere with state law and policymaking, the Court finds that Burford abstention is warranted.[3]

### 3. Likelihood of Conflict with State Proceeding

In addition to the Court's findings in regards to factors one and two, the First Circuit has cautioned that "a federal court may abstain only where conflict with state administrative processes cannot be avoided through careful conduct of the federal case." Chico, 633 F.3d at 33 (citing Planned Parenthood League of Mass. v. Belotti, 868 F.2d 459, 464 (1st Cir. 1989)). Federal court review of this case would conflict with the state proceeding, as Plaintiff seeks review of a state administrative decision in federal court rather than state court, "effectively creating a dual review structure for adjudicating a state's specific regulatory actions." Id. at 34 (citing Vaqueria, 587 F.3d at 474).

The First Circuit's decision in Vaqueria is instructive. In declining abstention, the First Circuit ruled that abstention was inappropriate because: (1) federal court review would not disrupt the state agency's "role as the regulatory decision-maker or interfere with the agency's ability to apply its expertise to local facts in establishing a coherent state policy;" and (2) the "heart of plaintiffs' action" was a constitutional challenge to the state agency's "decision-making process as a whole, and not to the reasonableness of their particular determinations." 587 F.3d at 474. Furthermore, the First Circuit found it important that the district court did not rule on the merits of specific agency orders and instead focused its ruling on the overall administrative decision-making process, which it found to be arbitrary and unconstitutional. Id. The First

---

[3] To support its argument that this case presents a question concerning a federal regulatory scheme rather than questions of state law and policy, Plaintiff cites Meachem v. Wing, 77 F. Supp. 2d 431 (S.D.N.Y. 1999), in which the district court declined to abstain from a case challenging New York's implementation of the predecessor to SNAP – the Food Stamp Act. Id. at 443. Meachem, however, is readily distinguishable from the instant case. Meachem involved a class action brought by all individuals whose benefits had been terminated and that challenged the fairness of benefits termination hearings under the Due Process Clause of the Fourteenth Amendment. Id. at 435. This case does not implicate the important federal interests raised by a challenge under the Due Process Clause, nor does Plaintiff here challenge the Department's hearings process.

Circuit highlighted that the district court had not conducted a "highly individualized review of particular, firm-specific regulatory decisions." Id. at 475 (quoting Bath Mem'l Hosp., 853 F.2d at 1014). Rather, the district court addressed the plaintiffs' claims that the entire system by which the administrative agency rendered its decisions violated the Due Process and Equal Protection rights of those subject to its regulations. Id. at 477.

The differences between Plaintiff's action and Vaqueria are instructive. Here, Plaintiff seeks an order declaring that the Department improperly calculated his food assistance benefits. The heart of Plaintiff's case is not a constitutional challenge to the Department's overall decision-making or hearings process; rather, the relief requested by Plaintiff requires that the Court directly review actions taken by the Department's Administrative Hearing Officer and circumvent Maine's state court appeals process. Under the Plaintiff's desired scenario, the Court would make a particularized determination regarding food assistance benefits, and, in doing so, would lack the Department's subject-matter expertise and local knowledge. Thus, the Court's review of this action would be prohibited by the First Circuit's prohibition against disrupting the state agency's "role as the regulatory decision-maker [and] interfer[ing] with the agency's ability to apply its expertise to local facts in establishing a coherent state policy." Id. at 474. In effect, Plaintiff is asking the Court to act in a prohibited capacity – that of an appellate court reviewing, and overturning, the state hearing officer's decision. See Huffmire, 35 F. Supp. 2d at 133 ("[A] federal court does not have appellate power over original proceedings in a state's administrative tribunals."). Thus, because conflict with state administrative processes cannot be avoided in this case, Burford abstention is warranted.[4]

---

[4] Because the Court holds that abstention is appropriate in this case pursuant to the doctrine set forth by Burford and its progeny, the Court need not determine whether federal court review of this case is precluded by res judicata. Nevertheless, the Court notes that "[c]ommon law res judicata doctrine may still apply to unreviewed administrative findings in section 1983 actions, depending upon a balancing of factors including the interests involved, the power

## B. <u>Younger</u> Abstention

<u>Younger</u> and its progeny set for the "principle that, with limited exceptions, federal courts should refrain from issuing injunctions that interfere with ongoing state-court litigation, or, in some cases, with state administrative proceedings." <u>Maymo-Melendez v. Alvarez-Ramirez</u>, 364 F.3d 27, 31 (1st Cir. 2004) (citing <u>Younger</u>, 401 U.S. at 43-45, 53-54). While the <u>Younger</u> doctrine initially applied to protect state criminal prosecutions against interference, it "has been extended to 'coercive' civil cases involving the state and to comparable state administrative proceedings that are quasi-judicial in character and implicate important state interests." <u>Id.</u> (citing <u>Huffman v. Pursue, Ltd.</u>, 420 U.S. 592, 603-05 (1975); <u>Ohio Civil Rights Comm'n v. Dayton Christian Schs., Inc.</u>, 477 U.S. 619, 623-27 (1986); <u>Middlesex County Ethics Comm. v. Garden State Bar Ass'n</u>, 457 U.S. 423, 432, 435 (1982)). Accordingly, the First Circuit requires <u>Younger</u> abstention if: "(1) there is an ongoing state judicial proceeding involving the federal plaintiff that (2) implicates important state interests and (3) provides an adequate opportunity for the federal plaintiff to assert his federal claims." <u>Christian Action Network v. Maine</u>, 679 F. Supp. 2d 140, 145 (D. Me. 2010). If those requirements are met, abstention is mandatory unless there are "extraordinary circumstances, which "include bad faith, harassment and extreme bias; great and immediate irreparable harm to core constitutional values;" and a statute that "flagrantly and patently" violates the Constitution. <u>See id.</u> (citing <u>Esso Std. Oil Co. v. Lopez-Freytes</u>, 522 F.3d 136, 143 (1st Cir. 2008), and <u>Younger</u>, 401 U.S. at 53-54).

---

of the agency to decide the claims, and the adequacy of agency procedures." <u>See</u> <u>Diaz-Seijo v. Fajardo-Velez</u>, 397 F.3d 53, 55 (1st Cir. 2005) (citing <u>Astoria Fed. Sav. & Loan Ass'n v. Solimino</u>, 501 U.S. 104, 109-10 (1991)). "The circuit courts have split over the relationship between state agency actions and subsequent section 1983 suits arising out of the same underlying facts." <u>Id.</u> (internal citation omitted).

The key question here is whether the State proceedings qualify under Younger and its progeny as the proper type of administrative proceeding to warrant abstention. The First Circuit has held that Younger abstention does not apply to remedial proceedings; rather, "proceedings must be coercive, and in most cases, state-initiated, in order to warrant abstention." Guillemard-Ginorio v. Contreras-Gomez, 585 F.3d 508, 522 (1st Cir. 2009). In Guillemard-Ginorio, the First Circuit explained that if the state proceeding "does not require any kind of formal procedure before an administrative order becomes final and if an appeal process is available only upon request, then appeal proceedings are remedial and not coercive, and abstention is inappropriate." Christian Action Network, 679 F. Supp. 2d at 146 (citing Guillemard-Ginorio, 585 F.3d at 523).

Here, Plaintiff argues that the state proceedings at issue in this case were remedial – not coercive – and therefore that abstention is inappropriate. The record does not indicate when the Department determined that C.K.'s Social Security benefits would be counted as income in calculating the food assistance benefits allotted to Plaintiff's household. However, the record does indicate that the Department's determination was applied to Plaintiff's benefits allotment before undertaking any process that was judicial in character. See Guillemard-Ginorio, 585 F.3d at 521 (citing Maymo-Melendez, 364 F.3d at 35-36 (holding that "where the federal plaintiff was sanctioned by the local racing board only after full-fledged administrative proceedings that were judicial in character, abstention pursuant to Younger was required through the full continuum of those proceedings, including judicial review of agency action")). Here, there is no indication in the record that a hearing took place, that witnesses were called on behalf of Plaintiff, or that Plaintiff had a chance to present an argument prior to the Department's determination of Plaintiff's benefit.

After the Department's determination went into effect, Plaintiff requested a hearing challenging the Department's decision. This administrative hearing was remedial rather than coercive because the administrative appeal process could be triggered only on Plaintiff's initiative if he wished to pursue his remedies within Maine's administrative framework. See Guillemard-Ginorio, 585 F.3d at 523. Accordingly, Younger abstention is inapplicable.[5]

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's Motion to Dismiss (Docket # 7) and DISMISSES this action.

SO ORDERED.

Dated this 13th day of January, 2012.

---

[5] Defendant argues that the precise type of proceeding involved is not the touchstone for Younger abstention; rather the salient fact is whether federal interference in the proceeding at issue is "an offense to the State's interest likely to be every bit as great as it would be were [it] a criminal proceeding." See Juidice v. Vail, 430 U.S. 327, 335 (1977). Defendant's analysis ignores the clearly stated rulings of this Court and the First Circuit, both of which have made clear that the type of state proceeding involved is a key factor in determining whether Younger abstention applies. See, e.g., Guillemard-Ginorio, 585 F.3d at 522-23; Christian Action Network, 679 F. Supp. 2d at 146.